488 A.2d 348

**COMMONWEALTH of Pennsylvania**

v.

**Alex SHERMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted May 31, 1984.

Decided Feb. 1, 1985.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTEMURO, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

On April 3, 1981, while standing on the corner of 52nd and Woodland Streets in Philadelphia, Stanley Williams was shot in the abdomen in an unprovoked attack. Even after the victim fell to the ground wounded, his assailant continued to fire at him, but fortunately missing, as the victim crawled away. Following the attack, the victim was taken to Misericordia Hospital. There, although in critical condition, the victim gave a statement identifying his attacker as appellant, Alex Sherman, a man from the same neighborhood as the victim.

Williams survived the shooting and testified against appellant at the preliminary hearing, identifying appellant as the man who shot him. However, prior to the trial, Williams received several threats against his life, and, apparently because of these threats, Williams declined to positively identify appellant at trial. Whereupon, the Commonwealth introduced evidence of Williams' testimony taken at the preliminary hearing along with similar statements made by the victim while in the hospital, and later to the district attorney just prior to trial.

Appellant now argues that the trial court erred in admitting as substantive evidence the victim's three pre-trial statements identifying appellant as the assailant. It is appellant's assertion that this was an improper use of a witness' prior inconsistent statements. We reject appellant's characterization of the victim's trial testimony as being inconsistent with that witness' prior statements.

At the preliminary hearing, Williams positively identified appellant as the assailant and was able to describe the gun

used in the shooting. Also, when asked by defense counsel on cross-examination whether "there was anyone else there" when he was shot, Williams replied that there was another person present. However, when Williams was asked to identify this other person, the Commonwealth objected and, for reasons not apparent from the record, this objection was sustained.

Subsequently, when Williams took the stand at trial, he testified to many of the same facts that he had at the preliminary hearing. Specifically, Williams reiterated the date and place of the shooting and the fact of his seeing appellant standing two feet away from him just before the shooting. However, when Williams was asked to tell who shot him, Williams asserted that he did not recall, that he did not remember seeing the gun, and that there was another, unidentified man standing next to appellant at that time. To quote from Williams' testimony on direct examination, Williams stated:

Q. (District Attorney): Okay. And who shot you?

A. (Williams): All I seen was Alex standing there, that's all I can say.

Q. Did you see him with a gun?

A. I can't recall.

Q. You can't recall. Now, Alex was the only person standing there, is that right?

A. Plus there was another dude on the side. (N.T. November 9, 1981 at 53.)

.    .    .    .    .

Q. And I asked you whether or not you saw Alex with a gun, and I believe your answer was you don't recall?

A. No. I don't recall.

Q. Did you see the other man with any weapons?

A. I didn't see neither one of them with nothing. But, I know they was the only two that was there. (N.T. at 55)

Q. Where did you see [the gun]?

A. The first thing when I turned around I could see a gun flash. That's whoever it was that shot me. And that's all I remember.

Q. Who was right next to you at that time?

A. There was two people in front of me. Alex and somebody else.

Q. And you were looking right at them?

A. And I was looking right at a gun barrel. (N.T. at 65)

.    .    .    .    .

Q. By the way, before I get into the notes [of the preliminary hearing] themselves, do you remember from that hearing who you told the judge shot you?

A. No, I don't. (N.T. at 71)

On the basis of this testimony, the Commonwealth now argues that the introduction of Williams' preliminary hearing testimony at trial was allowable under an exception to the hearsay rule where a witness is unavailable due to a lapse of memory. We find the Commonwealth's position to be sound.

In *Commonwealth v. Graves*, 484 Pa. 29, 398 A.2d 644 (1979), the supreme court was faced with a comparable issue. There, at the defendant's first trial, one Edward Mathis, a witness for the prosecution, gave testimony implicating the defendant. At the second trial, Mathis denied being able to recall many of the events surrounding the crimes at issue. The trial court ruled that Mathis' recollections were so general in nature, owing to the witness' memory loss, that the witness was "unavailable" to the prosecution, and thus the witness' testimony from the prior trial could be introduced. On appeal the supreme court affirmed the trial court's ruling on the grounds that prior testimony may be admitted under an exception to the hearsay rule where a witness is unavailable due to a lack of memory. On this point, the court said:

The narrower issue in this case is whether what appears to be the witness' partial lack of memory renders him unavailable for purposes of the common law excep-

tion. Although there is authority to the contrary, *the better view seems to be that partial memory loss also renders the witness unavailable and the prior testimony as well as the present testimony is admissible....* This approach has the value of fairness to both parties in that necessary testimony is admitted, with the opponent being permitted to cross-examine the witness both as to his asserted lack of memory as well as to his present testimony.

484 Pa. at 38, 398 A.2d at 649 (footnote omitted) (emphasis added).

■ We find that the previously quoted passages from Williams' testimony indicate that the witness on direct examination was repeatedly asserting that he could not recall who shot him. We find this sufficient under *Graves* to allow for the introduction of this witness' prior testimony.

We might further add that our view of this appeal is not changed by *Commonwealth v. Waller,* 498 Pa. 33, 444 A.2d 653 (1982), cited by appellant. *Waller* proscribes only the use of prior *inconsistent* statements. In *Waller,* the witness did not assert a loss of memory; rather, the witness related a different version than he had previously of the events surrounding the crime at issue. We find the instant case to be readily distinguishable from *Waller* since the witness herein *does* assert a loss of memory and does not directly contradict the essentials of his previous testimony.

■ As for the evidence regarding the statements which the victim gave to police while he was in the hospital and later to the district attorney in the corridors of the courthouse, we similarly do not view these statements as being inconsistent with the victim's trial testimony. It is true, however, that *Commonwealth v. Graves, supra,* does not apply to these latter statements, since *Graves* pertains only to prior testimony in court. Additionally, we must reject the Commonwealth's assertions that these latter two statements are admissible under exceptions to the hearsay rule for prior statements of identification, past recollection

recorded, or dying declarations. Nonetheless, we do not see the admission of these statements as warranting a reversal since in material part they merely reiterate the essentials of the victim's preliminary hearing identification testimony, which we find to be properly admitted. As the supreme court has said on this point: "An error [in admitting evidence] which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence." *Commonwealth v. Story*, 476 Pa. 391, 411, 383 A.2d 155, 165 (1978) (footnote omitted).

In the instant case, all of the challenged statements were the same in that they specifically identified appellant as the assailant. Thus, the victim's hospital statement and his statement to the district attorney prior to the trial are merely cumulative of the victim's preliminary hearing identification testimony. We thus find no reversible error in the admission of these statements.

■■■ Appellant also argues that the evidence was insufficient to convict him because the victim did not make a positive identification of appellant at trial and that the only evidence linking appellant to the crime was the victim's allegedly improperly admitted pre-trial statements. It is a well-settled rule of law that an appellate court will not judge the sufficiency of the evidence on a diminished record; rather, all evidence actually received at trial is considered, whether the trial rulings thereon were right or wrong. *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982). *Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978); *Commonwealth v. Baker*, 466 Pa. 479, 353 A.2d 454 (1976). Accordingly, all of the victim's statements are to be considered along with the remainder of the evidence at trial. Since the victim positively identified appellant as the assailant, we find the evidence to be sufficient to sustain the verdicts.

Perhaps the issue presented in this appeal was best summed up by the trial court when it stated in its opinion:

Phrased more bluntly, under the law of the Commonwealth today, may prior statements with an indicia of reliability be introduced in a case, or is it still profitable to scare a witness out of testifying?

In our view, the answer to this question must be "no". Accordingly, we affirm appellant's conviction.

Affirmed.

HOFFMAN, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

The majority holds that Williams's preliminary hearing testimony is admissible as substantive evidence. Because I disagree, I must respectfully dissent.

Appellant challenges his conviction, by alleging trial court error in admitting Williams's prior inconsistent statements as substantive evidence. The majority finds first that the prior statements were not inconsistent. I cannot agree. In his preliminary hearing testimony and hospital statements, Williams positively identified appellant as his assailant; however, at trial, he testified that he did not know whether appellant or his companion had fired the shots. (N.T. November 9, 1981 at 66, 83). Clearly, these statements are not consistent. Furthermore, at trial, Williams's prior statements were specifically admitted under the authority of *Commonwealth v. Loar*, 264 Pa.Superior Ct. 398, 411–13, 399 A.2d 1110, 1117–18 (1979) (witness's prior inconsistent statements may be admitted as substantive evidence). The trial court's reliance upon *Loar* formed the basis of this appeal because our Supreme Court subsequently rejected the *Loar* rationale in *Commonwealth v. Waller*, 498 Pa. 33, 39 n. 2, 444 A.2d 653, 656 n. 2 (1982), and reaffirmed the traditional rule that prior inconsistent statements may only be admitted for the purposes of impeachment and may not be used as substantive evidence. *See also Commonwealth v. French*, 501 Pa. 134, 460 A.2d 725 (1983). Subsequent decisions by this Court have adhered to the *Waller* rule. *See, e.g., Commonwealth v. Matthews*, 314 Pa.Superior Ct.

38, 460 A.2d 362 (1983); *Commonwealth v. Thirkield*, 311 Pa.Superior Ct. 413, 457 A.2d 954 (1983). I would hold, therefore, that Williams's prior inconsistent statements were improperly admitted as substantive evidence in the instant case.

The majority, however, also finds that Williams's preliminary hearing testimony was admissible under the hearsay exception for prior testimony of an unavailable witness. A witness' prior recorded testimony from a preliminary hearing is admissible provided that the defendant had counsel and a full opportunity to cross-examine the witness during the earlier proceeding. *Commonwealth v. Sandutch*, 498 Pa. 536, 449 A.2d 566 (1982); *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980). A witness may be deemed unavailable due to a partial or total memory loss. *Commonwealth v. Graves*, 484 Pa. 29, 398 A.2d 644 (1979) (partial memory loss); *Commonwealth v. Von Smith*, 303 Pa.Superior Ct. 534, 539–540, 450 A.2d 55, 58 (1982) (total memory loss). In the instant case, however, I find that the Commonwealth failed to show that Williams suffered from any memory loss. At trial, Williams testified in considerable detail regarding the events of April 3, 1981. Although he stated that he could not recall whether appellant had a gun, N.T. November 9, 1981 at 53, 55, his subsequent testimony, rather than indicating a loss of memory, demonstrated that he *never* knew whether appellant had a gun. (*Id.* at 55, 65–66, 83, 155). Williams further explained that, while he had previously assumed that appellant had shot him, upon reflection he could not be sure that appellant, rather than his companion, had fired the shots. (*Id.* at 63, 83, 127, 146, 153). I am therefore unable to agree with the majority's characterization of Williams's testimony as indicating that he was unable to recall who shot him. Accordingly, I would not admit the prior testimony under the unavailable witness exception.

I do agree with the majority, however, that Williams's prior statements are also inadmissible under the hearsay exceptions for a prior statement of identification, *see Com-*

*monwealth v. Floyd,* 327 Pa.Superior Ct. 569, 476 A.2d 414 (1984), past recollection recorded, *see Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Cooley,* 484 Pa. 14, 398 A.2d 637 (1979), or a dying declaration, *see Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520 (1978).

Accordingly, because I find no valid basis for admitting Williams's prior statements, I would reverse the judgment of sentence and remand for a new trial.