J-S27027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                          :             PENNSYLVANIA
                                                          :
                v.                                  :
                                                            :
RAYMOND C. BROWN                    :
                                                            :
                Appellant                     :     No. 1752 EDA 2024

Appeal from the Judgment of Sentence Entered April 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0019906-2023

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                            :             PENNSYLVANIA
                                                            :
                v.                                  :
                                                            :
RAYMOND C. BROWN                    :
                                                            :
                Appellant                     :     No. 1753 EDA 2024

Appeal from the Judgment of Sentence Entered April 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0019907-2023

BEFORE:  STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED SEPTEMBER 4, 2025**

     Raymond Brown appeals from the judgment of sentence entered after he was convicted of two counts of indirect criminal contempt (ICC) of an order for Protection From Abuse (PFA).  **See** 23 Pa.C.S. § 6114(a).  He challenges the sufficiency of the evidence to sustain his convictions.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

On November 6, 2023, Brown was charged separately with two counts of ICC, as well as one count of harassment and other offenses. The cases ultimately proceeded to a non-jury trial on April 9, 2024.

At trial, the Commonwealth presented the testimony of the complainant, Celestine Martin. Martin testified that Brown called her phone and sent her a text message on June 14, 2023, knocked on her door and said her name on June 17, 2023, and sent another text message on June 19, 2023. In support, the Commonwealth introduced screenshots of the text messages and phone call, surveillance footage of the visit, and copies of a temporary PFA order into evidence. The first text message, from June 14, 2023, read:

> I told you to come talk to me we could have resolved this now you face time in jail and lose your kids. I give you one more chance before our next court date, because the next it will be dismissed. It your choice

Exhibit C-1 (verbatim).

> The second text message, from June 19, 2023, read:

> Babe I fuck up with you so badly. I lost you and my son. My life is so worthless with out you. The things I did to you, and the family is unforgettable. But not impossible. You may never want me and I understand, like I told you before my life is meaningless with out you. Yes I lied on you made you look like a baby person. This will only end two ways. Me dead or in jail. I am not going back to jail.

> Please meet me let me just talk and get this out and I will go if you want for good.no matter how it goes you all will be free from the legal bs.....

Exhibit C-7 (verbatim).

The PFA order, entered as Exhibits C-4, C-6, and D-1, prohibited Brown from contacting Martin and excluded Brown from any "permanent or temporary residence" where Martin may live. The order was effective February 6, 2023, "until modified or terminated by the court." Notably, the PFA order itself did not indicate that Brown was served. Martin did not see if Brown was served.

To demonstrate that Brown was aware of the PFA order prohibiting him from contacting Martin or being at her residence, the Commonwealth also presented (1) an affidavit of service and (2) a civil docket sheet. The affidavit of service was never marked as an exhibit or moved into evidence; Brown objected to its admittance. The affidavit of service indicates that someone named Justine Hammond handed the temporary order to Brown at 11:55 a.m. on February 8, 2023. The Commonwealth was unable to locate Justine Hammond.

The docket sheet, entered as Exhibit C-5,[1] reflects that Brown filed for and obtained a temporary *ex parte* PFA order against Martin on February 2, 2023. Martin filed for and obtained a temporary *ex parte* PFA order against Brown on February 6, 2023. The docket sheet refers to Brown's petition as "emergency petition" and Martin's as "cross complaint."

---

[1] The trial court attached a copy of a docket sheet dated August 7, 2024, to its opinions. In this Court, the Commonwealth filed an application to correct the record, attaching an annotated docket sheet dated February 8, 2024. The differences between the docket sheets are immaterial to our analysis.

The docket sheet indicates that trial was scheduled on both petitions for February 9, 2023; that day, both cases were continued to May 10, 2023. The following docket entries accompany the continuances:

> Rule 236 notice given. Both parties present. Case cont'd to 5/10/2023 CRT 3F at 9AM for possible criminal matter and [Martin's] new counsel to be present. Temporary order to remain in effect. (Emergency petition)
>
> *       *       *
>
> Rule 236 notice given. Both parties present. Case cont'd to 5/10/2023 CRT 3F at 9AM for possible criminal matter and [Martin's] new counsel to be present. Temporary order to remain in effect. (Cross complaint)

Exhibit C-5, at 2 (capitalization omitted).

According to the docket sheet, Brown filed a petition to vacate/withdraw his petition against Martin on February 17, 2023. His request was granted on February 23, 2023, with the following docket entry:

> Notice given under Rule 236. [Brown] only appeared today. Temporary order vacated and the petition to vacate is granted. The hearing scheduled 5/10/23 is canceled. (Emergency)

*Id.* (capitalization omitted).

The docket sheet indicates that on May 10, 2023, at 10:40, the case was continued. It states that both parties were present:

> Rule 236 notice given. Both parties present. Case cont'd to 7/21/2023 CRT 3F [at] 9AM for pending criminal matter. Temporary order to remain in effect. (Cross complaint)

*Id.* (capitalization omitted).

This entry was the last notation on the docket sheet before the dates of the incidents when Brown contacted Martin and knocked on her door.

- 4 -

After hearing argument, the trial court found Brown guilty of both counts of ICC and not guilty of harassment. The trial court sentenced Brown to three to six months of incarceration and six months of reporting probation for the two ICC convictions.

Brown filed timely *pro se* and counseled post-sentence motions. While post-sentence motions were pending, Brown filed *pro se* notices of appeal. The post-sentence motions were denied by operation of law on August 19, 2024. We treat the notices of appeal as timely filed. Pa.R.A.P. 905(a)(5). Brown filed a *pro se* statement of matters complained of on appeal, and the trial court entered two opinions explaining its rulings. **See** Pa.R.A.P. 1925.

Brown's trial counsel moved to withdraw, which the trial court granted. On October 2, 2024, this Court remanded for a hearing to determine whether Brown wanted to proceed *pro se*. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). Meanwhile, Brown filed motions to consolidate his two cases on appeal and to withdraw and vacate the appeals. On October 18, 2024, this Court granted the motions to consolidate and denied the motions to withdraw Brown's appeals. Brown filed a *pro se* motion to alter/amend the order for a **Grazier** hearing, indicating that he desired appellate counsel. The trial court appointed counsel for appeal. The parties filed appellate briefs.

Brown filed a *pro se* application to remand and appoint new appellate counsel. This Court denied Brown's motion by *per curiam* order.

Brown presents the following issue for review:

> Whether the court determined beyond a reasonable doubt that there was sufficient evidence to establish [Brown] was in indirect [criminal] contempt of a [PFA] order under 23 Pa.C.S. § 6114 where the court did not believe that he was given sufficient notice of the existence of the [PFA] order, or service thereof, where the court acknowledged reasonable doubt as to whether [Brown] was even served with a [PFA] order.

Brown's Brief at 4.

Brown argues that the evidence was insufficient to prove that he had notice of the PFA order entered on February 6, 2023. He faults the trial court for relying on his attendance at a proceeding on May 10, 2023, to prove that he had knowledge of the order when he contacted Martin after that date. Brown observes that the trial court, in announcing its ruling, stated: "I wasn't convinced there was service at the beginning potentially," and even directed that Brown be (re)served with the PFA order "so there's absolutely no question whatsoever." N.T., Trial, 4/9/24, at 79, 84. He contends that the trial court was not confident that he had been served and therefore could not find him guilty beyond a reasonable doubt.

Additionally, Brown argues that the evidence was insufficient to prove that the PFA order was definite and clear, or to prove that he acted with intent to violate the order.

This Court reviews an ICC conviction to determine whether the facts support the trial court's decision; we will reverse if the trial court committed "a plain abuse of discretion." *Commonwealth v. Brumbaugh*, 932 A.2d 108, 111 (Pa. Super. 2007) (quoting *Commonwealth v. Kolansky*, 800 A.2d 937, 939 (Pa. Super. 2002)). "An abuse of discretion is not merely an error

of judgment," instead, a court abuses its discretion if "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Walker v. Walker***, 321 A.3d 1060, 1063 (Pa. Super. 2024) (quoting ***Commonwealth v. Jackson***, 283 A.3d 814, 817 (Pa. Super. 2022)).

When this Court assesses evidentiary sufficiency, we examine "all evidence actually received at trial." ***Commonwealth v. Sherman***, 488 A.2d 348, 350 (Pa. Super. 1985) (citations omitted). Generally, a reviewing court can consider an exhibit used at trial, even if there was no formal motion to admit it into evidence. ***See Commonwealth v. Jones***, 271 A.3d 452, 456–57 (Pa. Super. 2021). However, this concept does not apply where one party opposes an exhibit and the trial court does not receive it into evidence. ***See Commonwealth v. Snowden***, 330 A.3d 422, 430–31 (Pa. Super. 2025).

Our standard of review requires us to analyze "whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." ***Commonwealth v. Taylor***, 137 A.3d 611, 614 (Pa. Super. 2016) (citation omitted).

Indirect criminal contempt is a violation of a court order outside the presence of the court. ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa. Super. 2007) (citation omitted). "Where a PFA order is involved, an [ICC]

charge is designed to seek punishment for violation of the protective order."

*Id.* To obtain an ICC conviction, the Commonwealth must prove four elements beyond a reasonable doubt:

> 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1172 (Pa. Super. 2022) (citation omitted).

The second element, notice of the order, does not require proof that the PFA order was personally served on the defendant. *Commonwealth v. Padilla*, 885 A.2d 994, 997 (Pa. Super. 2005). Instead, the Commonwealth must prove "that, at the time of the violation, the defendant had actual knowledge of the PFA order, regardless of how the defendant gained this knowledge." *Commonwealth v. Stevenson*, 283 A.3d 196, 199 (Pa. 2022).

Here, the Commonwealth presented two documents to demonstrate that Brown had actual knowledge of the PFA order against him: the affidavit of service and the civil docket sheet. Because the Commonwealth never moved the affidavit of service into evidence, and Brown objected to its admissibility, it is outside the scope of our review. *See Snowden*, 330 A.3d at 430–31. However, we do consider the civil docket sheet, which the trial court received into evidence.

The civil docket sheet, as the trial court reasoned, was proof that Brown and Martin were both present in court on February 9, 2023, with PFA orders

- 8 -

against each other. On February 23, 2023, Brown moved to vacate the PFA order he had against Martin. After the motion was granted, the only PFA order remaining between the parties was the temporary order entered on Martin's cross-petition against Brown. With only that order in effect, Brown showed up at court again on May 10, 2023, the date of the scheduled hearing.

The trial court found that Brown's appearance at the hearing on Martin's PFA petition was proof that Brown had notice of the petition and the resulting order against him. We agree. The civil docket sheet reasonably supports the inference that Brown had notice of the order against him prior to the dates that he contacted Martin and went to her residence.

Brown's remaining arguments fail. His acquittal of harassment does not require a finding that he was not guilty of ICC; harassment requires proof of elements that ICC does not. The trial court's on-the-record statements about its deliberative process, or its "reservice" direction after trial, do not negate the evidence from trial. The PFA order was definite, clear, and specific in prohibiting Brown from having "ANY CONTACT" with Martin and excluding him from any "permanent or temporary residence" where Martin may live. The trial court could find that Brown acted with wrongful intent to violate the PFA order because of the substantial certainty that sending Martin text messages and knocking on her door violated the order. The trial court did not abuse its discretion in finding the evidence sufficient to convict Brown of ICC. We therefore affirm his judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/4/2025